UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION


JOSHUA ALVAREZ ARROYO,

                    Petitioner,

vs.                                Case No.  2:07-cv-105-FtM-29SPC

SECRETARY,  FLORIDA  DEPARTMENT  OF
CORRECTIONS,

                    Respondent.
_____


## OPINION AND ORDER

### I. Status

     Petitioner Joshua Alvarez Arroyo (hereinafter "Petitioner" or
"Arroyo") initiated this action by filing a *pro se* Petition for
Writ of Habeas Corpus ("Petition," Doc. #2) pursuant to 28 U.S.C.
§ 2254 on November 9, 2006.[1]  Johnson challenges his September 5,
2001 state court judgment of conviction for Attempted Second Degree
Murder and Robbery With a Firearm arising in the Twentieth Judicial
Circuit Court, Lee County, Florida (case number 99-127CF).
Petition at 2.  The Petition raises six claims of ineffective
assistance of trial counsel.  See generally id. at 4-9.

---

[1]The Petition (Doc. #2) was originally filed in the United
States District Court for the Southern District of Florida on
November 15, 2006 and transferred to this Court on February 22,
2007 (Doc. #1).  The Court, however, applies the "mailbox rule" and
deems the Petition "filed on the date it was delivered to prison
authorities for mailing."  Alexander v. Sec'y Dep't of Corr., 523
F.3d 1291, 1294 n.4 (11th Cir. 2008).

In accordance with the Court's Order to Show Cause (Doc. #13), Respondent filed a Response to the Petition (Doc. #17, Response) and supporting exhibits (Exhs. 1-20), including a transcript of the evidentiary hearing on Petitioner's Rule 3.850 motion. Petitioner filed a Reply to Respondent's Response (Doc. #20, Reply). This matter is ripe for review.

## II. Procedural History

Arroyo was charged by Information with attempted first degree murder with a firearm and robbery with a firearm. Exh. #20, Vol. 1 at 2-3. Arroyo proceeded to trial on July 24, 2001, and was represented at trial by Assistant Public Defender Richard Donnelly. The jury returned a guilty verdict of the lesser included offense of attempted second degree murder and on the robbery with a firearm charge. Id., Vol. 2 at 42-43. On September 5, 2001, the court sentenced Arroyo to thirty (30) years imprisonment on the second degree attempted murder count, and life imprisonment on the armed robbery count, the sentences to run concurrently. Id., Vol. 3 at 93-100.

Arroyo, represented by appointed counsel, James T. Miller, pursued a direct appeal raising the following ground:

> whether the trial court committed fundamental error by permitting the introduction of a videotape deposition in lieu of trial testimony where there was no record evidence that appellant was present during the deposition and there was no record waiver of appellant's right to confront the witness against him.

Exh. 1.  The State filed an answer brief.  Exh. 2.  Arroyo filed a reply brief.  Exh. 3.  The appellate court *per curiam* affirmed Arroyo's conviction and sentence on October 25, 2002.  Exh. 4; <u>Arroyo v. State</u>, 834 So. 2d 163 (Fla. 2d DCA 2002).

On September 12, 2003, Arroyo filed a *pro se* motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure.  Exh. 6.  The State filed a response with attachments.  Exh. 8.  The post-conviction trial court summarily dismissed grounds 8, 9(a), 9(c), and 9(d), as facially insufficient.  Exh. 9.  The court granted an evidentiary hearing on the remaining grounds 2(b), 3, 4, 5, 6, 9, and 10.

The evidentiary hearing was held on March 22, 2004, at which Arroyo was represented by appointed counsel John D. Mills.  Exh. 10.  On June 24, 2004, the post-conviction trial court issued a final written order, denying the remaining grounds.  Exh. 11.

Arroyo appealed the denial of his Rule 3.850 motion.  Appointed counsel, Clark E. Green, Assistant Public Defender, filed an <u>Anders</u>[2] brief.  Exh. #12.  Arroyo filled a supplemental *pro se* brief raising ten claims.  Exh. 13.  The State filed an answer brief, restating Arroyo's ten claims into seven claims.  Exh. 14.  Arroyo filed a reply brief.  Exh. 15.  On August 18, 2006, the appellate court *per curiam* affirmed the post-conviction trial court's denial of Petitioner's Rule 3.850 motion.  Exh. 16; <u>Arroyo</u>

---

[2]<u>Anders v. California</u>, 386 U.S. 738 (1967).

v. State, 940 So. 2d 430 (Fla. 2d DCA 2006). Arroyo filed a motion for rehearing, which was denied. Exhs. 17, 18. Mandate issued November 3, 2006. Exh. 19.

### III. Applicable § 2254 Law

Arroyo filed his timely[3] Petition after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214 (1996). Consequently, post-AEDPA law governs this action. Abdul-Kabir v. Quarterman, 127 S. Ct. 1654, 1664 (2007); Penry v. Johnson, 532 U.S. 782, 792 (2001); Davis v. Jones, 506 F.3d 1325, 1331, n.9 (11th Cir. 2007). Under AEDPA, the standard of review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007). See also Parker v. Sec'y Dep't of Corr., 331 F.3d 764 (11th Cir. 2003). AEDPA altered the federal court's role in reviewing state prisoner applications in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." Bell v. Cone, 535 U.S. 685, 693 (2002).

### A. Deference to State Court Decision

A federal court must afford a high level of deference to the state court's decision. See, e.g., Ferguson v. Culliver, 527 F.3d

---

[3]The AEDPA imposes a one-year statute of limitations on § 2254 actions. 28 U.S.C. § 2244(d). Although not addressed by Respondent, the Court independently finds that the Petition was timely filed.

1144, 1146 (11th Cir. 2008). Habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See Brown v. Payton, 544 U.S. 133, 141 (2005); Price v. Vincent, 538 U.S. 634, 638-39 (2003). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson, 527 F.3d at 1146; Wright v. Sec'y Dep't of Corr., 278 F.3d 1245, 1253-54 (11th Cir. 2002). See also Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005).

"Clearly established federal law" consists of the governing legal principles, rather than the *dicta*, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. Carey v. Musladin, 549 U.S. 70, 74 (2006)(citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). In cases where nothing in the Supreme Court's jurisprudence addresses the issue on point or the precedent is ambiguous and gives no clear answer to the question, it cannot be said that the state court's conclusion is contrary to, or constitutes an unreasonable application of, "clearly established Federal law." Wright v. Van

Patten, 128 S. Ct. 743, 747 (2008); Mitchell v. Esparza, 540 U.S. 12, 15-16 (2003).

A state court decision can be deemed "contrary to" the Supreme Court's clearly established precedents within the meaning of § 2254(d)(1) only if: (1) the state court applies a rule that contradicts the governing law as set forth in Supreme Court cases, or (2) the state court confronts a set of facts that is "materially indistinguishable" from those in a decision of the Supreme Court and yet arrives at a different result. Brown, 544 U.S. at 141; Mitchell, 540 U.S. at 15-16. Further, it is not mandatory for a state court decision to cite, or even to be aware of, the relevant Supreme Court precedents, "so long as neither the reasoning nor the result . . . contradicts them." Early v. Parker, 537 U.S. 3, 8 (2002); Mitchell, 540 U.S. at 16.

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown, 544 U.S. at 134; Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), cert. denied, 534 U.S. 956 (2001); or, "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 120 S. Ct. at 1520). The "unreasonable application"

inquiry "requires the state court decision to be more than incorrect or erroneous"; it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18. Depending upon the legal principle at issue, there can be a range of reasonable applications. Yarborough v. Alvarado, 541 U.S. 652, 663-64 (2004). Thus, the state court's decision is not subject to federal review de novo; rather, § 2254(d)(1) relief is only available upon a showing that the state court decision meets the "objectively unreasonable" standard. Id. at 665-66.

A § 2254 petitioner can also obtain relief by showing that a state court decision "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(2). Where the credibility of a witness is at issue, relief may only be granted if it was unreasonable, in light of the evidence presented, for the state court to credit the testimony of the witness in question. Rice v. Collins, 546 U.S. 333, 338 (2006). Additionally, a factual finding by a state court is presumed to be correct and a petitioner must rebut this "presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Miller-El v. Dretke, 545 U.S. 231, 240 (2005); Henderson, 353 F.3d at 890-91. This statutory presumption of correctness, however, "applies only to findings of fact made by the state court, not to mixed determinations of law and fact." Parker v. Head, 244 F.3d 831, 836 (11th Cir.), cert. denied, 534 U.S. 1046

-7-

(2001) (citation omitted).  An ineffective assistance of counsel claim is a mixed question of law and fact; therefore, the presumption does not apply and such claims are reviewed *de novo*. Rolling v. Crosby, 438 F.3d 1296, 1299 (11th Cir.), cert. denied sub nom. Rolling v. McDonough, 126 S. Ct. 2943 (2006).

Finally, if the state court fails or declines to rule on the merits of a particular claim raised before it, that claim falls outside of the scope of § 2254(d)(1)'s restrictions and the reviewing federal habeas court owes no deference to the state court decision when evaluating that claim.  Davis v. Sec'y Dep't of Corr., 341 F.3d 1310, 1313 (11th Cir. 2003).

### B. Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are reviewed under the standards established by 28 U.S.C. § 2254(d).  Newland v. Hall, 527 F.3d 1162, 1183 (11th Cir. 2008).  Post-AEDPA, the standard set forth in Strickland v. Washington, 466 U.S. 668 (1984), remains applicable to the claims of ineffective assistance of counsel raised in this case.  Newland, 527 F.3d at 1184.  In Strickland, the Supreme Court established a two-part test to determine whether a convicted person is entitled to habeas relief on the grounds that his or her counsel rendered ineffective assistance: (1) whether counsel's representation was deficient, i.e., "fell below an objective standard of reasonableness" "under prevailing professional norms," which requires a showing that "counsel made

errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment"; and (2) whether the deficient performance prejudiced the defendant, i.e., there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different, which "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." <u>Strickland</u>, 466 U.S. at 688; <u>see also</u> <u>Bobby Van Hook</u>, 558 U.S. ___, 130 S. Ct. 13, 16 (2009).

States may "impose whatever specific rules . . . to ensure that criminal defendants are well represented," but "the Federal Constitution imposes one general requirement: that counsel make objectively reasonable choices." <u>Bobby Van Hook</u>, 130 S. Ct. at 17 (internal quotations and citations omitted). It is petitioner who bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable." <u>Jones v. Campbell</u>, 436 F.3d 1285, 1293 (11th Cir. 2006), <u>cert. denied</u> <u>sub nom.</u> <u>Jones v. Allen</u>, 127 S. Ct. 619 (2006). A court must "judge the reasonableness of counsel's conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000) (quoting <u>Strickland</u>, 466 U.S. at 690), applying a "highly deferential" level of judicial scrutiny. <u>Id.</u> A court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." <u>Strickland</u>, 466 U.S. at 689. An

attorney is not ineffective for failing to raise or preserve a meritless issue. <u>Ladd v. Jones</u>, 864 F.2d 108, 109-10 (11th Cir.), <u>cert. denied</u> <u>sub nom.</u> <u>Ladd v. Burton</u>, 493 U.S. 842 (1989); <u>United States v. Winfield</u>, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable. But, the issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'" <u>Chandler v. United States</u>, 218 F.3d 1305, 1313 (11th Cir. 2000)(quoting <u>Burger v. Kemp</u>, 483 U.S. 776, 794 (1987)).

## IV. Findings of Fact and Conclusions of Law

This Court has carefully reviewed the record and, for the reasons set forth below, concludes no evidentiary proceedings are required in this Court. <u>Schriro v. Landrigan</u>, 550 U.S. 465, 127 S. Ct. 1933, 1939-40 (2007). Petitioner does not proffer any evidence that would require an evidentiary hearing, <u>Chandler v. McDonough</u>, 471 F.3d 1360 (11th Cir. 2006), and the Court finds that the pertinent facts of the case are fully developed in the record before the Court. <u>Schriro</u>, 127 S. Ct. at 1940; <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), <u>cert. denied</u>, 541 U.S. 1034 (2004).

The Court has reviewed the full post-conviction record, including the transcript from the evidentiary hearing and the trial

transcript.  The Court will cite to pertinent portions of the record and transcripts, to the extent relevant in assessing the various alleged instances of ineffectiveness of trial counsel that are raised in the Petition and that were properly exhausted in the state court.

In his Petition, Petitioner identifies the following six instances of ineffective assistance of trial counsel:

(1) Permitting the introduction of a video deposition in lieu of live testimony where there was no record that Petitioner agreed to the stipulation and no record waiver of Petitioner's right to confront the witness;

(2) Failing to file a motion to suppress the overly suggestive photo identification when the photo was not part of the evidence used in trial;

(3) Misadvising Petitioner as to the consequences of testifying, misadvising Petitioner that he should not testify or by failing to call Petitioner to testify;

(4) Conceding in closing arguments that Petitioner had been arrested;

(5) Failing to investigate and call Petitioner's alibi witnesses; and,

(6) Failing to investigate or interview all exculpatory witnesses before trial.

Each of the six grounds identified above were raised by Petitioner in his Rule 3.850 motion.  The post-conviction trial denied each of the grounds and the appellate court affirmed. Consequently, the Court will review each claim under the deferential standard of review.

**A.**

In his first claim for relief, Petitioner faults counsel for
permitting the introduction of a video deposition of Amber Krabbe,
where there was no record that Petitioner agreed to waive his
rights to confront the witness, or that Petitioner agreed to the
stipulation entered into between defense counsel and the
prosecution to permit the video deposition at trial. Petition at
4-5. Petitioner was afforded an evidentiary hearing on this issue.
Exh. 10. In denying this claim on the merits, the post-conviction
court found as follows:

> 6. Relying on Fla. R. Crim. P. 3.190(j)(3), Defendant
> alleged in issue 5 of his Motion that counsel was
> ineffective for "permitting the introduction of a
> videotape deposition in lieu of live trial testimony
> where there was no record evidence that the Defendant was
> present and there was no record waiver of the Defendant's
> right to confront the witness against him." According to
> the record, after taking State's witness Amber Krabbe's
> discovery deposition in Ohio in May of 1999, defense
> counsel felt that she was also a critical witness for the
> defense. See attached copy of request for status
> hearing. Because Krabbe had not been cooperative with
> efforts to contact her, defense counsel believed that she
> would probably not appear at trial. See attached copy of
> request for status hearing. Therefore, defense counsel
> requested and was granted leave to perpetuate Krabbe's
> testimony in case she did not appear at trial. See
> attached copies of Consolidated Motion for a Continuance
> of Trial and Motion for Order to Perpetuate Testimony and
> Order for a Continuance of Trial and Order Granting
> Request to Perpetuate Testimony. Krabbe did not appear
> at trial as anticipated and, therefore, her taped
> testimony was played to the jury per stipulation of the
> State and defense counsel. See attached copy of
> Stipulation on Video Tape of Amber Krabbe and Order.
>
> 7. Either party may apply for an order to perpetuate
> testimony. However, according to rule 3.190(j)(3),

> If the deposition is taken on the application
> of the state, the defendant and the
> defendant's attorney shall be given reasonable
> notice of the time and place set for the
> deposition. The officer having custody of the
> defendant shall be notified of the time and
> place and shall produce the defendant at the
> examination and keep the defendant in the
> presence of the witness during the
> examination.

Accordingly, the State was under no obligation in the instant case to abide by the conditions set forth in rule 3.190(j)(3) because the motion to perpetuate testimony was filed by the defense.

8. According to <u>Hanks v. State</u>, a defense attorney waives any claim of error by agreeing to the admission of a witness's deposition testimony and a personal on-the-record waiver by the defendant is not required. 786 So. 2d 634 (Fla. 1st DCA 2001). Pursuant to <u>Hanks</u>, counsel waived any errors by stipulating to the admission of Krabbe's taped testimony. Finally, the Court notes that it is clear from defense counsel's evidentiary hearing testimony that he stipulated to the admission of Krabbe's testimony in order to ensure that evidence crucial to the defense was presented to the jury. Counsel believed that Krabbe's testimony was critical to challenging the victim's identification of Defendant from the photo line-up provided by the police. See attached copy of evidentiary hearing transcript, pages 17-20. Defendant also appears to recognize that Krabbe's testimony was necessary to challenge the victim's identification of him as the perpetrator as expressed in issues 8 and 10 of his Motion. See attached copy of Motion, pages 29-31. Therefore, the Court finds that counsel's actions were based on trial strategy, his performance was not deficient within the meaning of <u>Strickland</u> and issue 5 is denied.

The trial court correctly recognized that <u>Strickland</u> governs ineffective assistance of counsel claims. Thus, Petitioner cannot meet the "contrary to" test set forth in § 2254(d)(1). Instead, Petitioner must demonstrate that the state court unreasonably applied <u>Strickland</u> or unreasonably determined the facts in his

case. The Court finds Petitioner has failed to carry his burden. The record clearly reflects that the decision by defense counsel to permit the deposition of Miss Krabbe was a matter of trial strategy. Defense counsel believed that Miss Krabbe, who was Petitioner's ex-girlfriend and lived in Ohio, would not show up for trial. Counsel considered Miss Krabbe's testimony, that she had mailed a photograph of the Petitioner "within a couple of days of the incident" to the victim's brother, who said he would take it to the hospital to show the victim, "very critical evidence" and favorable to the defense "to attack the photo I.D. lineup." Exh. 11 at 18-19.

Thus, Petitioner does not overcome the presumption that, in light of these circumstances, defense counsel's tactical decision constituted sound trial strategy. Strickland, 466 U.S. at 689. Because Arroyo has failed to establish the deficient performance prong of his Strickland claim, the Court need not address the prejudice prong. Id. at 697. Consequently, upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of his first ground because the state court's adjudication of the claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

**B.**

In his second claim for relief, Petitioner contends that counsel was ineffective for failing to file a motion to suppress the overly suggestive photo identification when the photo was not part of the evidence used at trial. Petition at 5-6. Petitioner argues that counsel should have asked Miss Krabbe whether the photo in the photo identification array was the same photo she gave to the victim's brother; and, whether "the photo in the line-up [was] the same photo that was shown to [the victim] by [his] brother." Id. at 6. Thus, Petitioner submits that the photo identification by the victim was tainted and should have been suppressed. The post-conviction trial court summarily denied this issue in its January 30, 2004 Order. Exh. 9. In relevant part, the post-conviction court held:

> 17. Defendant claims in issue 8 that his due process rights were violated because the photo line-up identification procedures used in his case were impermissibly suggestive and, accordingly, counsel was ineffective for failing to file a motion to suppress the identification. In support of his claim, he alleges that the victim's brother was in possession of a photograph of Defendant prior to the time the police showed the victim the photo lineup. He suggests that the victim's brother may have shown the victim his photograph before the police showed the victim the photo lineup, thereby tainting the victim's identification of Defendant.

> 18. The Fourteenth Amendment of the United States Constitution is directed solely towards state action. "[S]tate action will not be found in the purely private conduct of an individual voluntarily engaged in without some form of active assistance or cooperation on the part of the state. That Amendment erects no shield against merely private conduct, however, discriminatory or wrongful." Northside Motors of Florida, Inc. v.

> Brinkley, 282 So. 2d 617, 620 (Fla. 1973). Furthermore,
> "the same 'state action' requirement applies to the due
> process clause of our state constitution." Lloyd v.
> Brendemuehl, 714 So. 2d 1154, 1156 (Fla. 5th DCA 1998).
> See also, Art. I, §9, Fla. Const.
>
> 19. Under the facts alleged by Defendant, a private third
> party committed the prejudicial acts complained of
> without any assistance or cooperation on the part of the
> government. Accordingly, a motion to suppress the photo
> line-up identification on due process grounds would have
> been denied. Because there is no probability that the
> filing of a groundless motion to suppress would have
> changed the outcome of the proceedings, the Court finds
> that Defendant has failed to allege prejudice within the
> meaning of Strickland. Therefore, issue 8 is dismissed
> as facially insufficient.

Id. at 7-8.

The Court finds that the State court's summary rejection of this claim warrants deference. The State court's adjudication of this claim was not contrary to clearly established federal law. See Lugar v. Edmondson Oil Co., 457 U.S. 922, 936 (1982)(stating that the Fourteenth Amendment does not prohibit "private conduct however discriminatory or wrongful," unless the private individual has become so allied with the state as to be a state actor). Further, Petitioner does not identify a viable factual and legal basis to support defense counsel filing a motion to suppress concerning the photo identification lineup. Thus, counsel cannot be deemed ineffective for failing to raise a non-meritorious objection. Ladd v. Jones, 864 F.2d 108, 109-10 (11th Cir.), cert. denied sub nom. Ladd v. Burton, 493 U.S. 842 (1989). Consequently, the Court denies ground two as without merit, finding that Petitioner has failed to demonstrate that the State court's

adjudication of the claim was contrary to clearly established federal law, involved an unreasonable application of clearly established federal law, and was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

**C.**

Petitioner's third ground for relief concerns defense counsel's advice concerning Petitioner testifying at trial. Petitioner complains that counsel: (a) misadvised him as to the consequences of testifying; (b) misadvised him that he should not testify; and, (c) failed to call him to testify. Petition at 6-7. Petitioner was afforded an evidentiary hearing on sub-claim (a) and (b). The post-conviction court summarily denied sub-claim (c) in its January 30, 2004 Order, finding that:

> Defendant admits in his Motion that counsel advised him that the final decision on whether or not to testify was his [Defendant's] to make. He further admits that he decided to take counsel's advice and not testify. Accordingly, issue 2(c) is denied because the Court finds that defense counsel cannot be deemed ineffective for failing to call Defendant to testify after Defendant had already informed him that he did not want to testify.

Exh. 9 at 5. After the conclusion of the evidentiary hearing, the post-conviction court denied sub-claims (a) and (b) on the merits, holding as follows:

> 2. In issue 2(a) of his Motion, Defendant alleged that counsel was ineffective for misadvising him as to the consequences of testifying on his own behalf. He alleged in issue 2(b) that counsel was ineffective for advising him not to testify on his own behalf at trial. Defendant claimed that he was told by counsel that if he testified,

the State could bring out the fact that he had a prior conviction. He argued that this advice was erroneous because his "prior [arrest] was dismissed" and, therefore, was "inadmissible by the State." Defendant stated in his Motion that counsel's misadvise caused him to forego his right to testify and the jury probably inferred from his silence that the charges against him were true. At the evidentiary hearing, Defendant testified that he informed his trial counsel of his prior arrest and his attorney said that it would probably affect him if he testified. See attached copy of evidentiary hearing transcript, page 28.

3. According to counsel's evidentiary hearing testimony, Defendant informed him that he had been arrested before but was not convicted. Counsel stated that he did not believe that it was in Defendant's best interests to testify at trial due to Defendant's lack of an alibi witness, poor command of the English language, and distinctive voice.[fn1] Defendant's prior record was not among the reasons why counsel thought Defendant should forego his right to testify. Finally, counsel stated that he left the ultimate decision up to Defendant as to whether or not he wanted to testify. See attached copy of evidentiary hearing transcript, pages 7-10. The Court finds that counsel's advise as to whether Defendant should testify on his own behalf was based on trial strategy. The Court further finds that counsel did not misadvise Defendant as to the consequences of testifying at trial. Accordingly, issues 2(a) and 2(b) are denied on the merits.

> [fn1] Counsel explained that one of the reasons he advised Defendant not to testify was because the victim had testified that the perpetrator had a distinctive voice and counsel believed that Defendant also had a distinctive voice.

Exh. 11 at 1-2.

Here, the record reflects that, as represented by Petitioner in his Rule 3.850 motion, defense counsel left the issue as to whether to testify up to Arroyo. Exh. 10 at 10. Further, it is clear that Petitioner, himself, made the decision not to testify on

his own behalf at trial. Petitioner admitted during the evidentiary hearing that his attorney told him, "It [sic] no good for you to testify," and, Arroyo "just went along with what [his attorney] say [sic] because [he] didn't know what to do then." Id. at 28. Moreover, during trial the State court apprised Petitioner that he had a right to testify, and Arroyo acknowledged that his counsel advised him of his rights, but that he "decided not to testify." Exh. 20, Vol. VI at 545-46.

During the evidentiary hearing, defense counsel acknowledged he discussed "the pros and cons" of Petitioner testifying with him, and expressly recalled that it was his belief that it was not in Arroyo's "best interests to testify," but that it "had nothing whatsoever to do with" Arroyo having or not having a prior record. Id. at 8. Instead, counsel was concerned that Arroyo "did not have the ability to be very convincing as to where he was at the time [of the crime]," "would have a difficult time understanding the State Attorney," and, had "a somewhat distinctive voice." Id. at 9. Indeed, defense counsel maintained that the issue of whether Arroyo had a previous conviction was never discussed in terms of Arroyo testifying. Id.

Based upon the foregoing, ths Court finds that Petitioner is not entitled to relief on sub-claim (a), (b) or (c), because the State court's decisions on these issues were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based

on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d).

**D.**

In his fourth ground for relief, Petitioner claims trial counsel was ineffective because counsel conceded in his closing argument that Petitioner was previously arrested. Petitioner was afforded an evidentiary hearing on this issue. Exh. 10. The post-conviction court, in denying this claim on the merits, held:

> 5. In issue 4, Defendant claimed that counsel was ineffective for disclosing his prior arrest to the jury during closing arguments. See attached copy of trial transcript, page 555. According to trial counsel's evidentiary hearing testimony, witness Amber Krabbe's videotaped deposition testimony was presented at trial by stipulation of the parties. Krabbe testified that she and Defendant, her ex-boyfriend, once got into a physical fight and "he went to jail for that." See attached copy of (trial transcript, pages 303-304, 348. According to trial counsel's evidentiary hearing testimony, he made a tactical decision to discuss Defendant's prior arrest during closing argument because he felt it was an issue that needed to be addressed and diminished. See attached copy of evidentiary hearing transcript, pages 16-17. Accordingly, the Court finds that counsel's actions were based on trial strategy, his performance was not deficient within the meaning of <u>Strickland v. Washington</u> and issue 4 is denied. 466 U.S. 668 (1984).

Exh. 11 at 3.

In his closing summation, defense counsel, suggested that Miss Krabbe "was probably a little miffed" that Petitioner did not "get excited" or act crazy when she told him she was leaving him. Exh. 20, Vol. VI at 555. In support, counsel argued that Arroyo probably has "had enough" with her, having previously got[ten] in

trouble once, got arrested" after he and Miss Krabbe had an argument. Id. As noted above, defense counsel stated that his reference to Petitioner's previous "arrest" was a tactical decision employed to "diminish[] the potential impact of just the fact that [Arroyo] was arrested." Exh. 10 at 17. Counsel opined that he did not think the jury would convict Arroyo "just because he had an arrest for some domestic argument with his girlfriend." Id.

"Trial counsel cannot be faulted for attempting to make the best of a bad situation." Stewart v. Dugger, 877 F.2d 851, 856 (11th Cir. 1989). Here, the jury had heard that Petitioner had previously been arrested after an argument with his previous girlfriend, Miss Krabbe. Counsel attempted to downplay the arrest and use it to explain why Petitioner was indifferent when Miss Krabbe left him, which apparently angered her. Under the circumstances, Petitioner has not "overcome the presumption that the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Thus, the Court finds that Petitioner has not satisfied his burden of showing that the State court's decision on this issue was based upon an unreasonable determination of the facts in light of the state court record.

**E.**

In his fifth ground for relief, Petitioner contends that counsel was ineffective for failing to investigate and call Petitioner's "alibi witnesses." Petition at 8-9. In particular, Petitioner states that Yolanda Lane would have testified that

Petitioner was at the apartment and was not the one who committed the crime. Additionally, Petitioner avers that his two sisters would have testified that he was with them at home at the time of the offense. Petitioner also faults counsel for not hiring a investigator to look for Ms. Lane in New York or seek "assistance from the court in securing" any of these witnesses' testimony. Id. Petitioner was afforded an evidentiary hearing on this issue. Exh. 10.

After considering the evidence and testimony, the post-conviction, finding that trial counsel was not deficient, ruled as follows:

> 9. According to issue 6 of Defendant's Motion, counsel was ineffective for failing to investigate or call Yolanda Lane to testify. Defendant argued that Lane witnessed the crime and reportedly told the police that Defendant (whom she knew personally) was not the perpetrator. Counsel testified at the evidentiary hearing that he wanted to call Lane as a witness at trial but he was unable to locate her. He stated that investigative staff from his office looked for Lane for over two years but they were unable to find her. His office continued searching for Lane even after the trial concluded. He also stated that the police attempted to find Lane but were likewise unsuccessful. See attached copy of evidentiary hearing transcript, pages 13-14. The record reflects that Lane was unavailable for trial despite counsel's diligent attempts to locate her. Accordingly, the Court finds that counsel's performance was not deficient within the meaning of Strickland and issue 6 is denied.
>
> 10. Defendant alleged in issue 9 that counsel was ineffective for failing to call his two sisters, Millie and Milagros Alvarez, as alibi witnesses. Defendant alleged that his sisters would have testified that he was at home with them at the time of the offense. According to counsel's evidentiary hearing testimony, the sisters were very uncooperative and would not speak to him about

the case. Counsel stated that he spoke with the sisters on the telephone and asked them to come to his office to discuss the case. Two or three separate office appointments were made, but the sisters never showed up for any of them. Defendant's family subsequently moved without notifying counsel of their new address. After learning their whereabouts, counsel went to the family home with an investigator to speak to them. He was able to contact one of the sisters at the home but she was uncooperative and "clearly did not want to testify." Counsel also "begged" Defendant on many occasions to get his sisters to cooperate with him. Counsel explained that he did not depose or call the sisters as witnesses at trial because he did not know whether they would have provided Defendant with an alibi or what else they might testify to. See attached copy of evidentiary hearing transcript, pages 22-24. The Court finds that counsel's actions were based on trial strategy, his performance was not deficient within the meaning of <u>Strickland</u> and issue 9 is denied.

The record reflects that, despite being unsuccessful, counsel diligently attempted to contact each of the three proposed "alibi" witnesses in an effort to secure their testimony on behalf of Petitioner. Defense counsel stated that he considered Ms. Lane, who allegedly had witnessed the crime, his "main witness" or "primary witness." Exh. 10 at 12. He testified that his office "looked for [her] literally over two years." <u>Id.</u> A warrant was issued for Ms. Lane's arrest and counsel's investigative unit communicated with people in New York in an attempt to locate her. <u>Id.</u> In fact, counsel explained that he continued to look for Ms. Lane "since the trial" but "but have never been able to find out where she is." <u>Id.</u> Counsel also sought to discover Ms. Lane's whereabouts through discovery of the police officers. <u>Id.</u> at 14.

Defense counsel also testified that Petitioner's sisters were not cooperative so he could not ascertain what, if any, evidence Petitioner's sisters could offer that would be beneficial to Petitioner. Id. at 22-23. Counsel explained in detail the efforts he undertook to try to get the sisters to cooperate with him. Id. at 22-24. Because counsel "had no idea what they were going to say," he decided not to depose the sisters or "bring them into the courtroom." Id. at 24. Despite Petitioner's insistence that his sisters were willing to testify on his behalf at trial, neither sister appeared at the evidentiary hearing to refute counsel's testimony that they were uncooperative or validate Petitioner's claim that they were willing to testify at trial.

"Which witnesses, if any, to call, and when to call them, is the epitome of a strategic decision and it is one that [the courts] will seldom, if ever, second guess." Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995). Further, counsel cannot be deemed ineffective for failing to persuade recalcitrant witnesses to testify. In light of the counsel's actions, the Court does not find that counsel was deficient. Consequently, the State court's decision on this issue was not based upon an unreasonable determination of the facts in light of the state court record and Petitioner is denied relief on this ground.

**F.**

In his final and sixth ground for relief, Petitioner attributes blame to counsel for failing to investigate or interview

all exculpatory witnesses before trial. Petition at 9. Petitioner identifies the victim's brother, Neil Jones, as a potential exculpatory witness and contends had counsel interviewed Jones, counsel would have learned that Jones showed the photo of the defendant to the victim, and counsel "[w]ould have established the grounds to file a motion to suppress the tainted photo identification" of Petitioner. Id. The post-conviction court summarily denied Petitioner's claim in its January 30, 2004 Order, to the extent that it raised a Fourteenth Amendment Due Process issue, but granted Petitioner an evidentiary hearing limited as follows:

> 21. Finally, in issue 10, Defendant claims that counsel was ineffective for failing to investigate and interview the victim's brother, Neil Jones, in order to determine the date he showed the victim Defendant's photograph. Defendant argues that if counsel had interviewed Neil Jones, he "would have known that the photo was shown to the victim three days before [Detective] Ramey showed [the victim] the photo line-up." Defendant argues that Neil Jones's testimony would have (a) provided counsel with grounds to file a motion to suppress the "tainted photo identification" and (b) revealed that the victim's
testimony on this issue was false. As previously discussed in issue 8, a motion to suppress on due process grounds based on the fact that Neil Jones had shown the victim a photograph of Defendant prior to the photo line-up identification would have been unsuccessful and would not have changed the outcome of the proceedings. However, Defendant has stated a facially sufficient claim of ineffective assistance of counsel for failing to investigate Neil Jones in order to determine whether his testimony could have challenged the competency and credibility of the victim's identification of Defendant. Accordingly, the Court finds that an evidentiary hearing is necessary in order to determine the merits of that portion of issue 10.

Exh. 9 at 9. Upon conclusion of the evidentiary hearing, the court denied the issue as to whether counsel was deficient for failing to

investigate Jones in order to challenge the credibility of the victim's identification of Petitioner as follows:

> 11. Defendant claimed in issue 10 of his Motion that counsel was ineffective for failing to investigate and interview the victim's brother, Neil Jones, in order to determine the date he [Neil Jones] showed the victim a photograph of Defendant. Defendant argued that Neil Jones would have testified that he had shown the photo to the victim before the victim positively identified Defendant from the police photographic line-up. At the evidentiary hearing, counsel testified that he did not think that Neil Jones was going to be helpful to the defense and he did not see the point of providing the prosecution with two witnesses [the victim and Neil Jones] who would both say that the victim picked Defendant from the photographic line-up before his brother showed him Defendant's picture. See attached copy of evidentiary hearing transcript, pages 24-26. Therefore, the Court finds that counsel's actions were based on trial strategy, his performance was not deficient within the meaning of Strickland and issue 10 is denied.

Exh. 11 at 6.

When a defendant alleges that counsel was ineffective for failing to depose a witness, he must specifically set forth the harm from the alleged omission, identifying "'a specific evidentiary matter to which the failure to depose witnesses would relate.'" Brown v. State, 846 So. 2d 1114, 1124 (Fla. 2003). Petitioner again argues that Mr. Jones' potential testimony could have been relied upon by defense counsel in moving for suppression of the photo identification line-up. As addressed by the Court in ground two above, Mr. Jones was not a state actor; and thus, counsel did not have grounds to move for suppression of the photo identification line-up.

Further, the record reveals that defense counsel intended to rely upon Miss Krabbe's deposition testimony to demonstrate when she provided the victim's brother, Neil Jones, with a picture of Arroyo. Counsel acknowledged that he was aware of Neil Jones' actions, but concluded that Mr. Jones would not have been truthful and did not think it wise to have two people - - the victim and Mr. Jones - - both testify that the victim was not shown the photograph, until after the victim identified Petitioner in the photo identification line up. Exh. 10 at 25. Instead, counsel felt it was more prudent to present evidence that: Miss Krabbe provided Arroyo's picture to Mr. Jones; Mr. Jones said he was going to visit his brother in the hospital; and, the victim identified Arroyo from the photo identification line-up while in the hospital, so the jury could infer that the victim's identification was tainted. Id. at 18-20. In fact, counsel opined:

> I think the jury saw through the silliness. I mean, obviously, [the victim] saw [the photograph]. And I think, quite frankly, my opinion is they threw out the identification issue. I don't think they thought that the photo I.D. lineup was legit.

Id. at 20. Thus, it is clear from the record that counsel made an informed tactical decision not to conduct a pretrial deposition of Mr. Jones, which is generally unchallengeable. Knowles v. Mirzayance, ___ U.S. ___, 129 S. Ct. 1411, 1420 (2009)(confirming that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable" (internal quotations and citations omitted)).

Petitioner has not shown that counsel's decision not to further investigate this issue with Mr. Jones was unreasonable. Strickland, 466 U.S. 691 (stating that "counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary."). Thus, the Court finds that the State court's decision on this issue was not based upon an unreasonable determination of the facts in light of the state court record and denies Petitioner relief on ground six.

Based upon the foregoing, the Court will deny the instant Petition. Any other claim not specifically addressed is found to be without merit under the legal principles set forth above.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1. The Petition for Writ of Habeas Corpus (Doc. #2) is **DENIED.**

2. The Clerk of the Court shall enter judgment accordingly; terminate any pending motions; and close this file.

**CERTIFICATE OF APPEALABILITY AND**
**LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED**

**IT IS FURTHER ORDERED** that Petitioner is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a district court must first issue a certificate of appealability (COA). Id. "A [COA] may issue . . . only if the applicant has

made a substantial showing of the denial of a constitutional right." Id. at § 2253(c)(2). To make such a showing, petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n. 4 (1983)). Petitioner has not made the requisite showing in these circumstances.

Finally, because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis*.

**DONE AND ORDERED** in Fort Myers, Florida, on this __26th__ day of January, 2010.


_____
JOHN E. STEELE
United States District Judge

SA: hmk
Copies: All Parties of Record